IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.S., a minor, by and through her parents, P.S. and M.S., <br><br> Plaintiff, <br><br> v. <br><br> FREMONT UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | No. C 06-07218 SI <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND GRANTING IN PART PLAINTIFF'S MOTION TO HEAR ADDITIONAL EVIDENCE** |

On August 17, 2007, the Court heard argument on plaintiff's motion for leave to amend, and plaintiff's request to hear additional evidence. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiff's motion for leave to amend, and GRANTS IN PART and DENIES IN PART plaintiff's motion to hear additional evidence.

**BACKGROUND**

Plaintiff K.S., a minor, by and through her parents, P.S. and M.S., filed this complaint against defendant Fremont Unified School District on November 21, 2006.

Plaintiff is a child diagnosed with autism spectrum disorder who alleges that defendant refused to provide her with a free and appropriate public education ("FAPE") designed to meet her unique needs. Compl. at 2-3. Plaintiff alleges that defendant denied her a FAPE for the 2002-03, 2003-04, 2004-05 and 2005-06 school years. *Id*. at 3. Specifically, plaintiff alleges that the individualized education program ("IEP") designed for plaintiff failed to include appropriate speech therapy, one-to-one support, and behavioral, academic, self-help, auditory processing and motor control services. *Id.*

1    Plaintiff alleged four claims in her original complaint: (I) appeal from a decision in favor of
2 defendant by an administrative law judge at the Office of Administrative Hearings, issued August 24,
3 2006, (II) violation of Section 504 of The Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), (III)
4 violation of Title II of The Americans with Disabilities Act, 42 U.S.C. §12132 ("ADA"), and (IV)
5 violation of The Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh Act").

6    On March 23, 2007, the Court issued an order denying defendant's motion to dismiss Claims
7 II and III of the complaint, and granting defendant's motion to dismiss Claim IV (Unruh Act) . The
8 Court dismissed Claim IV on the grounds that plaintiff failed to comply with the California Tort Claims
9 Act. The Court also indicated that if and when plaintiff successfully complied with the Tort Claims Act,
10 she could seek leave to amend her complaint.

11    Plaintiff has now filed a motion to amend the complaint, and a motion to hear additional
12 evidence on her first claim.

### I.    MOTION TO AMEND THE COMPLAINT

#### LEGAL STANDARD

Federal Rule of Civil Procedure 15 governs amendment of the pleadings. It states that if a responsive pleading has already been filed, the party seeking amendment "may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be very generous in granting leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"); *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

However, there are several accepted reasons to deny leave to amend, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the plaintiff has previously amended the complaint. *See Ascon Properties*, 866 F.2d at 1160; *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir. 1988). Courts do not ordinarily consider

2

the validity of a proposed amended pleading in deciding whether to grant leave to amend, but leave may be denied if the proposed amendment is futile or would be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

**DISCUSSION**

In her motion for leave to amend the complaint, plaintiff titles her argument section as follows: "Plaintiff requests leave to amend her complaint to demonstrate she has complied with the tort claims act pursuant to this Court's order." Mot. at 3:24-25. The section starts: "This Court should allow Plaintiff to amend her complaint to demonstrate Tort Claims Act compliance related to her Unruh Claims." Mot. at 3:26-27. She concludes the introductory section of her argument by stating: "Plaintiff is seeking to simply clarify her pleadings to ensure that her complaint reflects the fact that she has complied with the requirements of the Tort Claims Act." Mot. at 4:21-22. In the next sub-section she repeats the same argument, stating: "To reiterate, Plaintiff wishes to comply with this Court's Order by amending her complaint only to allege she has complied with the Tort Claims Act, that her presentation of claims has been rejected by FUSD and to reallege the Unruh Claims dismissed by this Court only for failure to comply with the above." Mot. at 4:25-5:2; *see also* Mot. at 5:22-26 ("Plaintiff's amendment will merely clarify that the Tort Claims Act has been met and that Plaintiff now seeks to allege only the Unruh Claims that were dismissed only for failure to meet the presentment requirements under the Tort Claims Act. Plaintiff is not surprising the Defendant or 'radically shifting' or changing the course of litigation in any way.").

Despite these representations to the Court, plaintiff has attached to her motion a proposed amended complaint that adds a new request for injunctive relief under the Unruh Act. *See* Amended Complaint ¶ 93 ("Plaintiff suffered damages, and seeks an injunction . . . ."); p. 16 ("Prayer for Relief . . . . (i) injunctive Relief"). In her motion for leave to amend, plaintiff makes absolutely no mention of her desire to add an injunctive relief claim to the Unruh claim. As discussed above, her motion focuses exclusively and explicitly on the desire to amend solely to plead compliance with the California Tort Claims Act.

In her reply, rather than apologizing for omitting mention of the new injunctive relief claim,

3

plaintiff argues that "Defendant has been aware that Plaintiff has always sought injunctive relief under Unruh." Reply at 2:10-11. Furthermore, she asserts, "Plaintiff filed her complaint on November 21, 2006 seeking in relevant part, money damages and injunctive relief. (Compl. at Pgs. 14-15 . . . )." Reply at 2:13-14. The Court has reviewed her initial complaint, however, and finds that injunctive relief is nowhere requested. Under Claim IV of the original complaint, plaintiff explicitly requests only money damages. *See* Complaint ¶ 91. Similarly, the prayer for relief in the original complaint makes no mention of injunctive relief. *See* Complaint at 15:21-16:6. Plaintiff also states that at oral argument on defendant's motion to dismiss, she "made clear that she was seeking injunctive relief . . . ." Reply at 2:20-21. The Court has reviewed the hearing transcript, and again finds plaintiff's representation less than accurate; nowhere in the cited portions of the transcript does plaintiff mention "injunction," or any synonym thereof. *See* Leigh Dec., Ex. A at 7-9. The closest plaintiff got to mentioning injunctive relief was a her statement that "looking at the underlying remedies that we are seeking, you could say we are asking on behalf of children to declare this policy, pattern and practice deemed violative . . ." *Id.* at 8:24-9:2.

Under the Federal Rules of Civil Procedure counsel have a duty to be fully candid with the Court. *See* Fed. R. Civ. P. 11(b) ("Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney is certifying that . . . (2) the . . . legal contentions therein are warranted . . . [and] (3) the allegations and other factual contentions have evidentiary support . . . ."); *see also* California Rules of Professional Conduct 5-200 ("In presenting a matter to a tribunal, a member: . . . Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law."). Whether by design, or inadvertence, counsel for plaintiff here has been less than fully accurate in her representations to the Court. The Court urges plaintiff to be more prudent and candid in her future communications with opposing counsel and the Court.

Despite the Court's concerns with plaintiff's motion, in light of the liberal standard for granting leave to amend, the Court will allow plaintiff to file the proposed amended complaint. The Court also agrees with defendants, however, that the new claim for injunctive relief significantly expands the scope of plaintiff's lawsuit. The claim adds new legal and factual issues, and expands the relevant temporal

4

scope. Consequently, to avoid prejudicing defendant, the Court will extend the discovery cut-offs for defendant by one month. Plaintiff must complete her discovery by the current deadlines. Similarly, the Court will extend defendant's deadline for filing dispositive motions to two weeks after the deadline for plaintiff.[1]

## II.     PLAINTIFF'S MOTION TO HEAR ADDITIONAL EVIDENCE

Plaintiff has also filed a motion requesting that the Court hear additional evidence before ruling on her first claim, which seeks review of the administrative decision rejecting her claims against defendant. For the following reasons, the Court GRANTS plaintiff's motion only in part.

### LEGAL STANDARD

Congress created the Individuals with Disabilities Education Act ("IDEA") to meet the unique needs of disabled children with a free, appropriate public education. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 181 (1982); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993). Congress amended the IDEA in 2004 with the Individuals with Disabilities Improvement Act, or IDEIA. The IDEIA contains numerous procedural safeguards to assure that schools meet the unique needs of disabled children. *Ojai*, 4 F.3d at 1469. Parents may file a complaint with the school district regarding the services provided under their child's individual education plan, and may pursue an administrative hearing if the complaint is unresolved. *Id.* If unhappy with the result of the hearing, parents may appeal the results through a civil action in state or federal court. *Rowley*, 458 U.S. at 176.

When a party appeals the administrative hearing result, the provisions of the IDEIA place the court in a unique position. The IDEIA provides, in pertinent part, that "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(ii). As a result, the court may give less than the usual

---

[1] The parties' proposed scheduling orders, discussed below, should incorporate these extensions for defendant.

5

deference to the administrative hearing officer's findings of fact. *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003), *superseded by statute in non-relevant part*, *M.L. v. Fed. Way Sch. Dist.*, 394 F.3d 634 (9th Cir. 2005). Complete de novo review, however, is inappropriate, because this would negate the administrative hearing process. *See id.* Due weight must be accorded to the administrative findings,[2] and the court determines how much weight to give to these findings and to any additional evidence it deems appropriate to admit. *See Ojai*, 4 F.3d at 1473; s*ee also Rowley*, 458 U.S. at 206; *Vashon*, 337 F.3d at 1127.

The Ninth Circuit has construed "additional" evidence to mean "supplemental" information. *Ojai,* 4 F.3d at 1472. Therefore, witnesses before the district court may not "repeat or embellish their prior administrative hearing testimony." *Id*. at 1473 (citing *Rowley*, 458 U.S. at 206). The Ninth Circuit further stated:

> The determination of what is "additional" evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo. A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial. . . . In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id.* (quoting case). Acceptable "reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.* (quoting case).

**DISCUSSION**

**A.  Dr. Howard Friedman**

Plaintiff first wants to allow additional testimony from Dr. Howard Friedman, a psychologist who observed and assessed plaintiff, and testified on her behalf at the administrative hearing. The

---

[2]The Ninth Circuit defines "due weight" as follows: "The court, in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole." *Vashon,* 337 F.3d at 1127.

6

additional testimony would "demonstrate how it is impossible to draw a conclusive determination as to K.S.'s cognitive capacity from her scores on the Mullens Assessment upon which the ALJ relied [] based on Dr. Sue Clare's testimony." Mot. at 11:20-23.

The Court will allow plaintiff to submit a declaration from Dr. Friedman, tailored to the issue of whether Mullens Assessment scores would allow an expert, such as Dr. Clare, to determine or estimate the I.Q. or cognitive capacity of a student such as K.S. Plaintiff was apparently not on notice that Dr. Clare would testify as to plaintiff's I.Q., and plaintiff contends she was not given the opportunity to rebut Dr. Clare's testimony at the administrative hearing. Defendant may submit an expert declaration in rebuttal, should it wish to do so.

Along with additional testimony from Dr. Friedman, plaintiff also wishes to add to the record the manual published by the Mullens Assessment manufacturer, and unidentified "articles related to the development of a child's IQ." Mot. at 11:17-19. Plaintiff does not explain what the Mullens manual is, nor what value it would add to these proceedings. Furthermore, plaintiff does not explain why she could not have placed the Mullens manual or the unidentified articles in the record at the administrative stage. The Court therefore DENIES plaintiff's request to add the Mullens manual and articles to the record.

## B.     Dr. Ronald Leaf

Plaintiff next seeks to present the testimony of Dr. Ronald Leaf, who would testify as to the ineffectiveness of the education program designed by defendant for plaintiff. Specifically, Dr. Leaf would testify that a program built around the "Applied Behavior Analysis" ("ABA") methodology would have been superior to the "eclectic approach" provided by defendant. Plaintiff argues that she learned at the hearing, for the first time, that defendant's education program followed an "eclectic approach." Plaintiff does not provide a compelling reason to allow additional testimony. The purpose of the administrative hearing was to explore the effectiveness of the IEP provided to plaintiff. The administrative hearing was plaintiff's opportunity to present her best evidence as to why the IEP was ineffective. To allow Dr. Leaf to now testify as to why the IEP was not adequate would impermissibly "change the character of the hearing from one of review to a trial de novo." *Ojai*, 4 F.3d

at 1473. The fact that defendant's expert described her IEP in a way she had never heard before does not justify additional evidence. Plaintiff was free to question any of the experts who testified at the hearing about the effectiveness of an "eclectic approach" versus an ABA methodology. The Court DENIES plaintiff's request to present the testimony of Dr. Leaf.

## C.     Ms. Cheri Worcester

Plaintiff next seeks to admit an updated ABA report authored by Ms. Cheri Worcester, along with video clips of Worcester working with K.S.'s father on certain goals and objectives. Worcester is a behavior analyst who testified on plaintiff's behalf at the administrative hearing. According to plaintiff, the additional evidence from Worcester "will demonstrate that K.S. responds to, and therefore would benefit from a structured, individualized, 1:1 therapy with a foundation in ABA . . ." Mot. at 16:9-11. Again, this is evidence that plaintiff could have presented at the evidentiary hearing.

The additional evidence from Worcester would also "demonstrate that K.S.'s 2006-2007 program is the same program . . . . [and] that this educational program is actually impeding K.S.'s progress." Mot. at 16:12-15. Plaintiff argues that evidence showing post-hearing improvement under a different program would be relevant to whether previous programs were adequate; therefore, evidence "that shows Plaintiff's lack of progress and regression" under the same program should also be admitted as relevant. Reply at 9:6-9. Plaintiff's logic is not convincing. There is already ample evidence in the record from at least four school years. Evidence regarding one more school year, involving a similar IEP and similar results, would therefore be of limited, if any, probative value or relevance.

The Court will not allow plaintiff to provide additional testimony or evidence from Worcester.

## D.     Evidence regarding the 2006-07 IEP

In addition to Worcester's testimony, plaintiff seeks to add to the record several pieces of evidence regarding the 2006-07 IEP. As discussed above, in the context of this appeal, post-hearing IEPs are not particularly probative. According to plaintiff, the 2006-07 IEP is the same as the challenged IEPs, and has had the same disappointing results. These facts, however, have little bearing on whether the ALJ correctly determined that prior IEPs were reasonably calculated to enable the

8

student to receive educational benefits. Such evidence would be cumulative, would increase the risks associated with reviewing the ALJ's decision with full hindsight, and would convert "the character of the hearing from one of review to a trial de novo." *Ojai*, 4 F.3d at 1473.

### E. Evidence related to the ALJ's qualifications

Plaintiff next seeks to add evidence to the record regarding the qualifications of the ALJ who heard their case. Plaintiff provides no authority that would allow review of the ALJ's qualifications as part of this Court's review of the administrative decision. Absent any authority, the Court will not engage in such an inquiry.

### F. Updated assessment of Jennifer Murphy

Jennifer Murphy is a speech therapist who testified on plaintiff's behalf at the administrative hearing, and continues to work with plaintiff on a 1 on 1 basis. Plaintiff seeks to add to the record an updated assessment report from Murphy. According to plaintiff, the report "evidences the meaningful goals and objectives that Ms. Murphy has created in comparison to the repeated goals and objectives that K.S. has been receiving from FUSD speech therapists." Mot. at 19:26-20:2.

Murphy testified at the administrative hearing regarding her work with plaintiff. Plaintiff fails to explain how the updated report would add any relevant information that Murphy did not provide, or could not have provided, at the hearing. The Court will not, therefore, allow plaintiff to embellish Murphy's testimony with additional assessment reports.

### G. Transcripts of the testimony of Judith Paton

Finally, plaintiff seeks to add to the record an independently-made transcript of the hearing testimony of Judith Paton. As discussed in the recent Order Re: Discovery, portions of the administrative record from the hearing before the ALJ are missing. In particular, the testimony of Judith Paton (plaintiff's expert), and Linda Martinez (defendant's expert), are missing from the record. Fortunately, plaintiff independently recorded much of the hearing, including portions of the Paton and Martinez testimony. Consequently, and pursuant to Court order, the parties have now arranged for the

9

transcription of the independent recordings of the Paton and Martinez testimony. Plaintiff requests that the Court add the Paton transcript to the record. The Court GRANTS plaintiff's request. *See Ojai,* 4 F.3d at 1472 (acceptable "reasons for supplementation . . . might include gaps in the administrative transcript owing to mechanical failure . . . ."). Should either party request the addition of the Martinez transcript, the Court will grant such request.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for leave to file and amended complaint, and DENIES IN PART and GRANTS IN PART plaintiff's motion to hear additional reference. In addition to the administrative record, the Court will consider the transcript of Judith Paton's testimony, and a declaration from Dr. Friedman regarding the use of Mullens Assessment scores in determining I.Q. or cognitive capacity.

As indicated at the August 17, 2007 Case Management Conference, the parties are hereby ORDERED to submit proposed scheduling orders, and suggest how the Court should proceed with plaintiff's first cause of action. The parties shall submit their proposals on or before September 14, 2007.

[Docket Nos. 52, 63]

**IT IS SO ORDERED.**

Dated: September 4 , 2007

SUSAN ILLSTON
United States District Judge